### Charley Williams v. The State.

#### No. 4947.    Decided February 26, 1919.

1.—Swindling—False Promises—Insufficiency of the Evidence.

Where, upon appeal from a conviction of swindling, the evidence in the record showed that the prosecuting witness was relying wholly upon the false promises of defendant and his companion, and their division with him of an unknown amount of money to which none of them had any sort of claim, and the acquisition of which would have constituted the offense of theft, the conviction could not be sustained.

**2.—Same—Rule Stated—Swindling—False Promises.**

The rule of law in Texas is that mere false promises can not form the basis of the crime of swindling, and it is exceedingly doubtful whether one who parts with his property in actual exchange for property delivered to him which he knows to be stolen and to which he can acquire no title, could under such circumstances be deprived of his property in such way as to make the offense swindling.

Appeal from the District Court of Cooke. Tried below before the Hon. Cas. F. Spencer.

Appeal from a conviction of swindling; penalty, two years imprisonment in the penitentiary.

The opinion states the case

*Culp & Culp, McCutcheon & Church,* and *Robert B. Allen,* for appellant.—Cited Denton v. State, 42 Texas Crim. Rep., 427; Davenport v. State, 49 id., 11; Johnson v. State, 50 id., 116; Herndon v. State, 50 id., 552; Smith v. State, 52 id., 80; Wyatt v. State, 55 id., 73; Gardner v. State, 55 id., 400.

*E. B. Hendricks,* Assistant Attorney General, for the State.—Cited Boscow, 33 Texas Crim. Rep., 390.

LATTIMORE, JUDGE.—In this case appellant was tried in the District Court of Cooke County for the offense of swindling and his punishment fixed at confinement in the State penitentiary for the term of two years, and he has brought his case to this court for review.

In our opinion the case should be reversed for any one of several reasons. It appears from the evidence that the prosecuting witness, Powell, was a colored gentleman of some affluence, owning a restaurant and a rooming house, and living in the City of Gainesville, and that the appellant appeared upon the scene one day and took a room at Powell's house. He at once began to comment, in the presence of Powell, upon his own wealth, asking Powell which of the banks was the best and most solvent and best fitted to take care of his money, and asking Powell's advice with regard to purchasing and installing a moving picture show for the delectation of the colored population of the City of Gainesville. After having fully ingratiated himself into the good graces of Powell, another colored man by the name of Morgan showed up and was seen on the streets with appellant. Shortly thereafter, while appellant and Powell were standing in front of the latter's place of business, Morgan was seen approaching and when a short distance away he stooped and picked up something from the ground, and appellant called Powell's attention to that fact, and asked him if he saw Morgan pick that thing up. Powell said: "I seen him pick up something." When Morgan came up appellant said to him: "What was that you found?" and Morgan said: "I found a pocketbook," and appellant then said to Morgan that he must "square us up," and after some further conversation between appellant and Morgan they got upon

the porch and turned their backs to the street so nobody could see them and Powell walked up and looked over their shoulders, and they opened the pocketbook and Powell says he saw the figures, and that there was a bill with a one and three naughts on it. Appellant then said: "We have got to get it changed up," and said to Powell: "You got any money?" and Powell said he had a little. They then proposed to the prosecuting witness, Powell, that he should raise what change he could and they would put the money, including that in the pocketbook, in a pot and divide it equally among the three; and the prosecutor then went and got $63 from the bank and gave it to appellant, and shortly thereafter appellant and Morgan left promising to get the money changed and come back and divide with him. As a matter of fact, and of course, they did not return and the prosecutor was left a sadder and a wiser man, doubtless reflecting upon the adage that certain classes of people are easily separated from their money. He admits that they did not, at any time, represent to him that the money in the .pocketbook was theirs, and that his expectation was to get a third of some money that belonged to some unknown person and that that was his purpose and expectation in parting with his $63.

It is perfectly plain from this statement, and an inspection of the record, that the prosecuting witness was relying wholly upon the false promises of appellant and Morgan and upon their division with him of an unknown amount of money to which none of them had any sort of claim, and the acquisition of which by them, under the circumstances, if in truth there had been any such money, would have constituted the offense of theft. The prosecuting witness does not claim to have gotten anything of any kind or character from appellant or Morgan in exchange for his money except the false promises aforesaid.

There is no better settled rule of law in Texas than that mere false promises can not form the basis of the crime of swindling, and can not be the basis of a swindling charge. Some attempt is made by the able State's counsel who drew the indictment to so frame it as to make it appear that the representation by appellant and Morgan that the pocketbook was found, was the false representation relied upon by the prosecuting witness and was a representation of something present or past. We apprehend that the thing which induced the witness Powell to part with his money was the promise of appellant and Morgan, at the time the money was delivered to them and prior thereto, to get it changed up and give to him one-third of it. It is exceedingly doubtful whether one who parts with his property in actual exchange for property delivered to him which he knows to be stolen and to which he knows he can acquire no title by the transaction, could under such circumstances be deprived of his property in such way as to make the offense swindling. He knows that the parties with whom he is dealing acquired the property without the knowledge or consent of the owner and that they have no title thereto. He is bound to know that if they promise to deliver it to him in exchange for his property, and do so actually deliver it to

him, that he is getting nothing and is parting with his property for the delivery to him of something to which he can have no possible title.

We do not think the facts in this case, as set forth in this record, sustain the charge of swindling, and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*